IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMY L. FOWLER-NASH,

      Plaintiff,                                       05cv1672

    v.                                         **ELECTRONICALLY FILED**

THE DEMOCRATIC CAUCUS OF
THE PENNSYLVANIA HOUSE OF
REPRESENTATIVES, ET AL.,

      Defendants.

## Memorandum Order

This is an action under 42 U.S.C. § 1983. Plaintiff, Amy Fowler-Nash, alleges that she was discharged from her position as a legislative assistant for Pennsylvania State Representative R. Ted Harhai because of her speech on a matter of public concern in violation of her First and Fourteenth Amendment constitutional rights and Section 1983. Defendants have filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12©) and in support state that plaintiff was employed as a legislative assistant and therefore they are entitled to legislative immunity because the decision to terminate her was "within the sphere of legitimate legislative activity." This Court disagrees, and therefore, will deny defendants' motion for judgment on the pleadings.

**I.    Facts**

The facts as gleaned from the pleadings indicate that Defendant R. Ted Harhai is an elected Pennsylvania representative. Defendant Scott Brubaker is Director of Staffing and Personnel for the Democratic Caucus of the Pennsylvania House of Representatives. Plaintiff, Amy Fowler-Nash, worked for the Democratic Caucus as Legislative Assistant for Rep. Harhai from April 2002 until November 2, 2005.

John J. Harhai, the brother of Defendant R. Ted Harhai, ran for a seat on the Council of

City of Monessen, Pennsylvania in the May 2005 Democratic Primary. After losing by seven votes to Jeffery Gagatko, John Harhai filed a Petitioned to Recanvass. The petition included affidavits of qualified electors stating claims of fraud or error in the election. Recanvassing revealed John Harhai received nine more votes than his competitor. However, Plaintiff informed Gagatko's counsel that numerous affidavits had been obtained in violation of Pennsylvania election law which requires a notary to be present during the signing of such affidavits. Plaintiff also informed Gagatko's counsel that she had witnessed a subsequent meeting between electors and notary in Rep. Harhai's office, so that the electors and notary would be familiar with one another in case of future proceedings regarding the affidavits.

On November 2, 2005, Scott Brubaker fired Fowler-Nash, telling her that Rep. Harhai deserved employees he could trust, and he could no longer trust her. In her pleadings, Plaintiff alleges her termination was a result of the information given to Gagatko and not a lack of loyalty to Rep. Harhai. Defendants however counter that Plaintiff's employment was terminated as a result of poor work performance, including poor work ethic and prohibited internet usage.

## II.     Standard of Review

In ruling on a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court must view the facts in the pleading and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Society Hill Civil Association v. Harris,* 632 F.2d 1045, 1058 (3d Cir. 1980). Unlike a motion under Rule 12(b), a motion under Rule 12(c) theoretically is directed toward a determination of the substantive merits of the controversy and consequently, such motion should be granted only where it is clear that the merits of the controversy can be fairly and fully decided in such a summary manner. *Shelly v. Johns-Manville Corporation*, 798

F. 2d 93, 94 (3d Cir. 1986). Judgment on the pleadings is appropriate when the Court determines that there is no material issue of fact presented and that one party is clearly entitled to judgment. *Society Hill Civil Association*, 632 F.2d 1045.

### III.     Discussion

#### A.  Speech or Debate Clause and Legislative Immunity

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." *U.S. Const., art. I §6, cl. I.* The Clause is a manifestation of practical security for protecting the independence of the legislative branch - by ensuring that legislators are not subject to "prosecution by an unfriendly executive and conviction by a hostile judiciary." *Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) (quoting *United States v. Johnson*, 383 U.S. 169, 179, 86 S. Ct. 749 (1966)).

The United States Supreme Court first addressed the Clause in *Kilbourn v. Thompson*, holding that members of Congress were immune from false imprisonment claims arising from their acts of voting for a resolution that ordered a witness's arrest. 103 U.S. 168, 26 L. Ed. 377 (1880). The Court broadly applied the immunity not merely to "words spoken in debate," but to committee reports, resolutions, voting, and "the things generally done in a session of the House by one of its members in relation to the business before it." *Id.* at 204.

Legislative immunity has been held applicable to state legislators since 1951, and is thus relevant to the instant case. *Tenney v. Brandhove*, 341 U.S. 367, 95 L. Ed. 1019, 71 S. Ct. 783 (1951). The scope of state legislators' immunity is "coterminous" with the absolute immunity afforded to members of Congress under the Speech or Debate Clause. *Larsen v. State of the Commonwealth*, 152 F.3d 240, 249 (3d Cir. 1998) (see *Supreme Court of Virginia v. Consumers*

3

*Union of the United States, Inc.*, 446 U.S. 719, 732-33, 100 S. Ct. 1967 (1980)).[1]

On its face, 42 U.S.C. §1983 "admits of no immunities." *Larsen*, 152 F.3d at 249 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984 (1976)).  However, courts have held that "Congress intended the statute to be construed in the light of common-law principles that were well settled at the time of its enactment." *Kalina v. Fletcher*, 522 U.S. 118, 123, 118 S. Ct. 502, 506 (1997).  Thus, Section 1983 does not extinguish the existing common law doctrine of legislative immunity.  Finally, legislative immunity under Section 1983 claims extend to state and local legislators. *Tenney*, 341 U.S. at 372-76; *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966 (1998) (local legislators are entitled to the same absolute immunity from civil liability claims under Section 1983 as federal, state, and regional legislators).

### B.  Scope of Legislative Immunity

Defendants' motion refers the doctrine of "absolute" legislative immunity.   However, the Supreme Court has been sparing in its recognition of claims to absolute immunity, specifically regarding the legislative immunity created by the Speech or Debate Clause. See, e. g., *Gravel v. United States*, 408 U.S. 606, 622-627 (1972); see also *Hutchinson v. Proxmire*, 443 U.S. 111, 123-133 (1979); *Doe v. McMillan*, 412 U.S. 306 (1973); *United States v. Brewster*, 408 U.S. 501 (1972); *United States v. Johnson*, 383 U.S. 169 (1966); *Kilbourn v. Thompson*, 103 U.S. 168 (1881).

In *Tenney v. Brandhove*, the Supreme Court held that legislative immunity extended to a claim that members of a state legislature had violated a witness's civil rights during a committee

---

[1]Pennsylvania's Constitution also contains a Speech or Debate Clause, which has been interpreted in accordance with the federal Constitution's Speech or Debate Clause. Pa. Const. Art. II, § 15; *Lunderstadt v. Colafella*, 885 F.d 66, 74 (3d Cir. 1989).

4

hearing on "Un-American Activities." 341 U.S. 367 (1951). Legislative immunity includes only those activities, "within the sphere of legitimate, legislative activity." *Id*. at 376. Additionally, whether activities fall within or without the scope of immunity depends on the activities, stripped of motive and intent. *Bogan*, 523 U.S. at 55; see *Tenney*, 341 U.S. at 377.

Since *Tenney*, the Court has used a "functional" approach to immunity to determine whether various activities fit within the sphere of immunized "legislative activities." In *Gravel v. United States*, the Court held that legitimate legislative activities are those that are "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation." 408 U.S. 606, 625, 92 S. Ct. 2614 (1972). In *United States v. Brewster*, the Court held the protected activity must be a part of "the due functioning of the legislative process." 408 U.S. 501, 516, 92 S. Ct. 2531 (1972).

While the Court has never set out a specific test to determine immunity, immunity is determined upon the "functions" it serves, not by persons to whom it attaches. *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538 (1988).

The Speech or Debate Clause is not so broad as to cover everything done by a legislator regarding the legislative process, nor acts incidentally related. *Brewster*, 408 U.S. at 513-528. Immunity does not cover political activities, including "a wide range of legitimate 'errands' performed for constitutions, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Id*. at 512. Immunity also does not extend to: accepting bribes, *Id.* at 526, disseminating classified legislative materials, *Gravel*, 408

U.S. at 625-626, or libelous publications, *Doe*, 412 U.S. 306.

### C. Analysis of staff termination

#### 1. Plaintiff's termination was a personnel decision and not a legislative act.

Defendants rely on *Agromayer v. Colberg*, 738 F.2d 55 (1st Cir. 1984), and *Browning v. Clerk, U.S. House of Representatives*, 789 F.2d 923 (D.C. Cir. 1986) in support of their position that they are immune from liability. In *Agromayer*, the United States Court of Appeals for the First Circuit held the Speaker of the House of Representatives of Puerto Rico was immune from an employment discrimination suit brought by a terminated employee. The First Circuit interpreted *Gravel* to mean that legislators are entitled to absolute immunity for personnel decisions where the employee's job function was related to the "due functioning of the legislative process." *Agromayer*, 738 U.S. at 60.

In *Browning*, the Clerk of the United States House of Representatives brought an action for employment discrimination. The United States Court of Appeals for the District of Columbia held that immunity depended upon whether the employee's duties were directly related to the "due functioning of the legislative process," and found that they were, and thus immunity applied. 789 F.2d at 929-30.

Defendants cite *Agromayer* and *Browning*, but fail to account for the Court's reluctance in later cases to apply absolute legislative immunity to the acts of officials regarding employees. In *Forrester*, the Supreme Court held that absolute immunity did not protect a state judge from a Section 1983 claim, where the judge allegedly terminated a female probation officer under his control. The personnel decision was administrative and not taken in a judicial capacity, and did not justify immunity. The Court applied the functional approach to officials' employment-

related acts.

In their Motion for Judgment on the Pleadings, Defendants portray Plaintiff's employment duties as that of an extension of Representative Harhai.  The Court noted in *Gravel* that "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos" for the Speech or Debate Clause to function properly. *Gravel*, 408 U.S. at 616-17.  However, the Court also noted that legislators' and legislative aides' acts must be "integral" to the functioning of the legislature. *Gravel*, 408 U.S. at 625.  Immunity for legislative aides serves the function of protecting aides from third-party claims, not from aides' claims regarding personnel decisions of the legislator.  *Id.* at 629; see *Forrester*, 408 U.S. at 629.

Defendants' cite *Bogan v. Scott-Harris,* 523 U.S. 44, and *Youngblood v. DeWeese*, 352 F.3d 836.  These cases are distinct from *Forrester*, as these both involved budgetary and appropriations acts that were legislative.  "Delegating to party leadership is no different than delegating to a legislative committee." *Youngblood*, 352 F.3d at 841-42 (act of allocating the General Assembly's office-staffing appropriation among individual Representatives is a legislative act to which immunity extends).  These decisions did not involve a legislator's personnel decisions regarding employment of his or her staff.

### 2. Plaintiff's termination was outside the scope of legislative immunity.

It is "the nature of the function performed, not the identity of the actor who performed it" that determines application of immunity to a legislator. *Forrester*, 484 U.S. at 227.  The issue in the instant case is whether the act of terminating Plaintiff's employment was within the sphere of immunity.  In determining this issue, we may not analyze the job functions of the Plaintiff, but

instead whether Defendants were performing acts related to the due functioning of the legislature. Further, we may not consider the motive for termination when determining whether immunity is applicable to Defendants. Thus, Plaintiff's assertions that she was fired in response to the election of John Harhai have no significance.

Plaintiff's facts, accepted as true, are sufficient to establish that she was terminated not as a result of a budgetary or appropriations decision, but as the result of Defendants' discretionary staffing decision, purportedly in violation of her First and Fourteenth Amendment constitutional rights and Section 1983. This decision to terminate Plaintiff was not a legislative act. The termination of Plaintiff's employment was a personnel decision under the *Forrester* case and thus is outside the scope of legislative immunity.

## IV.   Conclusion

For the reasons set forth hereinabove, the Court concludes that pursuant to Supreme Court and Third Circuit precedent, defendants are not entitled to absolute legislative immunity because defendant's discharge of plaintiff was not a legislative act, nor was it "within the sphere of legitimate legislative activity." Rather, this case involves nothing more than an administrative personnel decision taken by a legislator, an action which does not entitle defendants to immunity from suit.

Accordingly, defendants' motion for judgment on the pleadings (doc. no. 15) is DENIED.

SO ORDERED this 17th day of February, 2006.

s/Arthur J. Schwab

Arthur J. Schwab
United States District Judge

cc:     All counsel of record as listed below

Samuel J. Cordes, Esquire
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard, Fourth Floor
Pittsburgh, PA 15222

Jonathan F. Bloom, Esquire
Danielle Banks, Esquire
Thomas W. Dymek, Esquire
Billy J. Smith, Esquire
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
Philadelphia, PA 19103-7098